**PELTON & ASSOCIATES PC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SAKIKO FUJIWARA, MAYUMI IMOTO and SATOKO NAGAI, Individually and on Behalf of All Others Similarly Situated,**<br><br>                                 **Plaintiffs,**<br><br>**-against-**<br><br>**SUSHI YASUDA LTD. d/b/a SUSHI YASUDA, SHIGEYUKI AKIMOTO, NAOMICHI YASUDA, SCOTT ROSENBERG and ICHITARO KONO, Jointly and Severally,**<br><br>                                 **Defendants.** | **12 Civ. 8742 (WHP)** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPROVAL OF CLASS COUNSEL'S FEES AND COSTS

# TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND. ....................................................... 2

      I.     The Court's Preliminary Approval Order, Notice and Claim Administration ........ 2

      II.    Results of Notice ........................................................................................ 2

      III.   Contributions of the Named Plaintiffs ................................................... 3

SETTLEMENT TERMS .................................................................................................. 4

ARGUMENT .................................................................................................................. 4

I.     Final Approval of the Settlement Is Appropriate ................................................. 4

II.    The Settlement is Fair, Reasonable, and Adequate ............................................. 7

      A.    Litigation Through Trial Will Be Complex, Costly, and Long
            (*Grinnell* Factor 1) ................................................................................. 7

      B.    The Reaction of the Class Has Been Positive
            (*Grinnell* Factor 2) ................................................................................. 8

      C.    Discovery Has Advanced Far Enough to Allow The Parties To Resolve
            The Case Responsibly (*Grinnell* Factor 3) ............................................. 9

      D.    Plaintiffs Would Face Real Risks If the Case Proceeded
            (*Grinnell* Factors 4 and 5) .................................................................... 9

      E.    Establishing A Class and Maintaining It Through Trial Would Not Be
            Simple (*Grinnell* Factor 6) ................................................................... 10

      F.    Defendants' Ability to Withstand A Greater Judgment Is Not At Issue
            (*Grinnell* Factor 7) ............................................................................... 11

      G.    The Settlement Fund Is Subtantial, Even In Light of the Best Possible
            Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ........ 11

III.    Service Awards Are Appropriate in this Case ................................................. 12

IV.   Class Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Fund ...... 15

A.   The Terms in the Named Plaintiffs' Retainer, the Settlement Agreement, and the Class Settlement Notices Entitle Class Counsel to a fee of One-Third of the Settlement Fund .................................................................................. 15

B.   The Percentage of the Fund Method of Awarding Attorneys' Fees Is Appropriate in Common Fund Cases .................................................. 16

C.   An Award of One-Third of the Settlement Fund as Attorneys' Fees is Reasonable ...................................................................................... 17

    i.   Class Counsel has expended significant time and labor on this case ............. 18

    ii.   The large and complex nature of this litigation warrant the award of the attorneys' fees being requested ....................................................... 19

    iii.   Class Counsel took on a large amount of risk in prosecuting this case .......... 19

    iv.   Class Counsel's representation has been of the highest quality ..................... 20

    v.   The requested fees are reasonable in relation to the settlement ..................... 21

    vi.   Public policy weighs in favor of awarding attorneys' fees ............................. 22

D.   The Lodestar "Cross check" Further Supports an Award to Class Counsel of One-Third of the Settlement Fund ...................................................... 22

E.   Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs ...... 24

V.   The Settlement Adminsitrator's Fee Should Be Approved ................................. 25

CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beckman v. KeyBank, N.A.,*
    85 Fed. R. Serv. 3d 593 (S.D.N.Y. 2013) ........................................................ 19, 24

*Boeing Co. v. Van Gemert,*
    444 U.S. 472, 478 (1980) ..................................................................................... 16

*Churchill Village, LLC v. Gen. Elec. Co.,*
    361 F.3d 566, 575 (9th Cir. 2004) .......................................................................... 5

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448, 463 (2d Cir. 1974) .................................................................. *passim*

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ..................................................................................... 7

*deMunecas v. Bold Food, LLC,*
    No. 09 Civ. 00440(DAB), 2010 WL 3322580, *8 (S.D. N.Y. Aug. 23, 2010) ..................... 21

*Febus v. Guardian First Funding Grp., LLC,*
    870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ........................................................... 19

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................. *passim*

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43, 47 (2d Cir. 2000) ...................................................................... *passim*

*Guzman v. Joesons Auto Parts,*
    CV 11-4543 ETB, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) ............................... 20

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011, 1027 (9th Cir. 1988) ...................................................................... 5

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ............................................................... 7

*In re BankAmerica Corp. Sec. Litig.,*
    210 F.R.D. 694, 700 (E.D. Mo. 2002) ................................................................... 6

*In re Crazy Eddie Sec. Litig.,*
    824 F. Supp. 320, 326 (E.D.N.Y. 1993) .............................................................. 17

*In re Ira Haupt & Co.*,
  304 F. Supp. 917, 934 (S.D.N.Y. 1969) ............................................................... 10

*In re Janney Montgomery Scott LLC Financial Consultant Litigation*,
  No. 06-3202, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009)............................. 14

*In re Lloyd's Am. Trust Fund Litig.*,
  96 Civ.1262 RWS, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002) ..................... 17, 23

*In re Top Tankers, Inc. Sec. Litig.*,
  06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008)............................. 6

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*,
  724 F. Supp. 160, 163 (S.D.N.Y. 1989) ................................................................. 17

*Jemine v. Dennis*,
  901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ............................................................ 19

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) ................................. 13

*Kirsch v. Fleet Street, Ltd.*,
  148 F.3d 149, 172 (2d Cir.1998) ........................................................................ 16

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072, 1079 (2d Cir. 1998) ....................................................................... 5

*Mills v. Electric Auto–Lite Co.*,
  396 U.S. 375, 392, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970) .................................... 16

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140, 1148 (8th Cir. 1999) .................................................................... 5

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) .......................................................... 14

*Savoie v. Merchants Bank*,
  166 F.3d 456, 460 (2d Cir. 1999) ................................................................... 17, 24

*Sewell v. Bovis Lend Lease, Inc.*,
  09 Civ. 6548 RLE, 2012 WL 1320124, at *14–15 (S.D.N.Y. Apr. 16, 2012)....................... 13

*Shayler v. Midtown Investigations. Ltd.*,
  No. 12 Civ. 4685, 2013 U.S. Dist. LEXIS 29540, 2013 WL 772818
  (S.D.N.Y. Feb. 27, 2013) ................................................................................ 20

*Torres v. Gristede's Operating Corp.*,
   04-CV-3316 PAC, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) ............................... 13

*Toure v. Cent. Parking Sys.*,
   No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) ....................... 13

*Visa Check III*,
   297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) ............................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ........................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................... 4, 5

*White v. Western Beef Props., Inc.*,
   No. 07 Civ. 2354, 2011 U.S. Dist. LEXIS 141696, 2011 WL 6140512
   (E.D.N.Y. Dec. 9, 2011) ................................................................................. 20

*Willix v. Healthfirst, Inc.*,
   No 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) .............................. 8, 13

*Wineland v. Casey's Gen. Stores, Inc.*,
   267 F.R.D. 669, 678 (S.D. Iowa 2009) ................................................................. 14

*Wright v. Stern*,
   553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) ............................................................. 8

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 ....................................................................................................*passim*

## SECONDARY SOURCES

Herbert B. Newberg & Alba Conte,
   *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002) ............................... 5

## PRELIMINARY STATEMENT

Subject to final Court approval, the parties have settled the claims of Plaintiffs and the putative class and collective against Defendants Sushi Yasuda Ltd. ("Sushi Yasuda" or the "restaurant"), Shigeyuki Akimoto, Naomichi Yasuda, Ichitaro Kono and Scott Rosenberg (collectively, "Defendants"), for $2,400,000.00. Defendants Naomichi Yasuda and Ichitaro Kono were not served in this action but are released parties pursuant to the Settlement Agreement. The proposed settlement resolves all claims in the lawsuit alleging that Defendants failed to pay the Sushi Yasuda wait staff, bussers and sushi chefs correctly pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law, §§ 190 *et seq.*, 650 *et seq.* ("NYLL"). On May 14, 2014, the Court preliminarily approved the Parties' proposed settlement and authorized the issuance of Notice to Class Members. (*See* Doc. 47).

By this motion, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit 2 to the Declaration of Brent E. Pelton in Support of Plaintiffs' Motion for Final Approval of Class Settlement and Approval of Counsel's Fees and Costs ("Pelton Decl."); (2) approve the service payments to the Settlement Class Representatives as discussed in Argument Section III *infra*; (iii) approve an award of attorneys' fees and expenses in the amount of $800,000.00 (33.33% of the Settlement Fund); and (iv) enter judgment dismissing the federal action, including all claims under all federal, state and/or local law and/or regulations, with prejudice in accordance with the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.    The Court's Preliminary Approval Order, Notice and Claim Administration**

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (Doc. 46), and is not repeated here.

On May 14, 2014, the Court preliminarily approved the Parties' proposed settlement. (*See* Doc. 47). The Court also approved the two (2) versions of the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing and Response Form (the "Notice Packet") and authorized the mailing of the Notice to the Class Members. (*See id.*)

**II.    Results of Notice**

On May 16, 2014, the Settlement Administrator, Simpluris, Inc., received the Court-approved Notice Packet from Counsel. (Declaration of Christina Francisco ("Francisco Decl.") ¶ 4.) The Notice Packet advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information and provided their estimated payment. (*See* Francisco Decl. ¶ 4; Ex. A.)

Counsel for Defendants provided Simpluris with a mailing list ("Class List") containing the name, last known address, Social Security Number, and pertinent employment information during the Class Period for the Class Members. (Francisco Decl. ¶ 5.) The Class List contained data for eighty-seven (87) Class Members. (*Id.*) On June 3, 2014, after updating the mailing addresses through the National Change of Address Database ("NCOA"), Notices were mailed via Federal Express and First Class Mail to the Class Members. (*Id.* at ¶ 7.)

If a Class Member's Notice was returned by the USPS as undeliverable without a forwarding address, Simpluris performed an advanced address search ("skip trace") on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. (*Id.* at ¶ 9.)

Simpluris was able to locate ten (10) updated addresses and promptly mailed Notice Packets to those updated addresses. (*Id*.) To date, ten (10) Notices have remained undeliverable because no valid forwarding address has been located.. (*Id*.)

The response to the Notices has been overwhelmingly positive. As of this date, there are sixty-eight (68) Participating Class Members (Response Form Exceptions) who are eligible to receive a payment in the amount of each of his/her Original Settlement Share shortly after the Settlement is finally approved, in the aggregate amount of $1,158,857.29. That amount represents 84% of the Net Settlement Fund. (*Id*. at ¶ 10.)

Furthermore, only one (1) of the Class Members submitted a Request for Exclusion and no Class Member objected to the Settlement. (*Id*. at ¶¶ 11, 12.)

## III.    Contributions of the Settlement Class Representatives

The Named and Opt-In Plaintiffs ("Settlement Class Representatives") were integral in initiating this class action and made significant contributions to the prosecution of the litigation. (Pelton Decl. ¶ 7.) The Named Plaintiffs' services began with bringing the case and initiating the filing of the federal and state claims that were eventually resolved in the Settlement and allowed for up to eighty-seven (87) current and former employees of Sushi Yasuda to recover unpaid wages.

The Settlement Class Representatives served the class by providing detailed factual information regarding their job duties and hours worked, and the job duties and hours worked of the class members, assisting with the preparation of the complaint, helping prepare and execute declarations, producing documents in support of their claims, sitting for depositions, relaying information to Class Members during the pendency of this case, participating in the settlement negotiations, and assuming the burden associated with assisting with litigation. (*Id*. at ¶¶ 9.) The

Settlement Class Representatives also assisted Class Counsel to prepare for the mediations that took place on September 30, 2013 and November 20, 2013, respectively, and assisted with the continued settlement negotiations over the next several months which culminated in this settlement. Several of the Settlement Class Representatives also attended the mediation sessions and actively participated in the settlement negotiations thereafter.

In addition, the Settlement Class Representatives assumed other professional risks, including reputational risks, and burdens that the other class members did nothave. Service Awards of this type are commonly awarded in complex wage and hour litigation.

## <u>SETTLEMENT TERMS</u>

The terms of the Settlement Agreement, which were preliminarily approved by the Court October 28, 2013 (*see* Doc. 58), and have not changed since that date, are summarized in Plaintiff's Motion for Preliminary Approval of Class Settlement (Doc. 57), and are not repeated here.

## <u>ARGUMENT</u>

**I.      Final Approval of the Settlement Agreement Is Appropriate**

Because this is a class action, and because it involves FLSA claims, the Court must approve the settlement.  The procedure for approval includes three distinct steps:

1.      Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval, including preliminary approval of any agreed settlement classes;

2.      Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.      A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  The Court has already preliminarily approved the proposed settlement (Doc. 47) and notice of settlement has already been disseminated to all affected class members (*see* Factual and Procedural Background Section II *supra*).

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Under Fed. R. Civ. P. 23(e), to grant final approval of a settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable, and adequate." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 04 Civ. 8141 (DAB), 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright*

*v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 WL 5874655 at *2, *citing In re Top Tankers, Inc. Sec. Litig.*, 06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotations omitted). "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Massiah*, 2012 WL 5874655 at *2 (citations omitted).

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement. (Doc. 46).  It is clear from the facts of this case that the parties reached this settlement only after exchanging essential class-wide information, which allowed each side to assess the potential risks of continued litigation, and robust settlement negotiations, including a full-day and half-day of mediation sessions under the direction of experienced class action mediator, Linda R. Singer, Esq. of JAMS (*Id.*). In other

words, the settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful discovery.

## II.     The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 587655, at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

### A.     Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement before Rule 23 class certification, dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236

F.3d 78 (2d Cir. 2001). This case is no exception, with more than eighty-five (85) Class Members. (Pelton Decl. ¶ 4)

Although the parties have already undertaken considerable time and expense in litigating this matter (*id*. at ¶¶ 13-15), further litigation without settlement would necessarily result in additional expense and delay. Extensive additional discovery would be required to establish liability and damages. A complicated trial would be necessary, featuring lengthy testimony by Defendants, Plaintiffs, and numerous class members, in addition to possible expert testimony. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. A trial of the damages issues, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first Grinnell factor weighs in favor of preliminary approval.

## B.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

As previously stated, the response to the notices has been overwhelmingly positive. Class Counsel received telephone calls from Class Members and answered their questions about their claims and about the settlement. Class Counsel were told by Class Members that they were pleased with the settlement. (Pelton Decl. ¶ 6) No Class Members have presented objections to the settlement. (Francisco Decl. ¶ 11) "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No 07 Civ. 1143, 2011 WL 754862, at *4

(E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class members submitted timely objections and only 2 requested exclusion). Thus, this factor weighs strongly in favor of approval.

### C.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require hundreds more hours of discovery work for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The parties' discovery here meets this standard. Class Counsel defended the depositions of five (5) Class Representatives and took the deposition of four (4) Defendants. (Pelton Decl. ¶ 13). Class Counsel also interviewed several current and former employees of Sushi Yasuda to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed hard-copy documents including but not limited to, time and payroll records, work schedules, and employee personnel files; preparing for and attending both a full-day and a half-day mediation session; and engaging in extensive settlement negotiations.

### D.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the

settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and NYLL, and in light of the defenses available to Defendants, which would pose substantial risk as to both liability and damages.

To prove liability, Plaintiffs would have to defeat Defendants' arguments that the Plaintiffs were paid in accordance with the federal and state law. Defendants would also argue that the use of the gratuities by the restaurant to pay Plaintiffs and class members' wages is in compliance with the state law regulations relating to tip-sharing and distribution. Furthermore, Plaintiffs would have to establish that the case is appropriate for class certification and that the class and collective actions should remain certified for trial.

While Plaintiffs believe that they could ultimately establish Defendants' liability on these claims, to do so would require significant factual development. While Plaintiffs believe that their claims are meritorious, their counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. *See Massiah*, 2012 WL 5874655, at *4 ("Litigation inherently involves risks.") The proposed settlement alleviates this uncertainty. This factor weighs heavily in favor of preliminary approval. *See In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

        E.      **<u>Establishing a Class and Maintaining it Through Trial Would Not Be Simple (<i>Grinnell</i> Factor 6)</u>**

The risk of maintaining the class status through trial is also present. Although the Plaintiffs have filed for Rule 23 class certification, the motion was adjourned to allow for settlement discussions, knowing that the motion will be highly contested. Specifically, Defendants would argue that there are individualized questions as to the job duties and payment

structure for the class members that makes certification and ultimately trial on a class-wide basis impractical.

Risk, expense, and delay are involved in each of these steps in the litigation. Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

### F.     Defendants' Ability to Withstand a Greater Judgment is Not at Issue (*Grinnell* Factor 7)

The parties negotiated heavily over the settlement amount taking into account Defendants' ability to pay a settlement that would compensate the class for their alleged unpaid wages and allow Sushi Yasuda to remain in business. Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor does not hinder this Court from granting preliminary approval.

### G.     The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Plaintiffs' counsel has determined that this case presents significant risks that militate toward substantial compromise. Defendants have agreed to settle this case for a substantial amount, $2.4 million. (*See* Ex. 2 at ¶ A (38)). The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial, survived an appeal, and were able to collect any judgment obtained.

The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "Moreover, when a 'settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing "speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor." *Massiah*, 2012 WL 5874655, at *5.

Here, each Class Member will receive payment based upon his or her number of shifts worked for Defendants during the relevant time period. (*See* Ex. 2 at ¶ A(17)). As explained in detail above, the amount that each class member will receive reflects a careful balancing of the strengths of their underlying claims and the risks that their claims would not ultimately prevail. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Accordingly, all of the *Grinnell* factors weigh in favor of issuing final approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant its final approval.

## III.   Service Awards Are Appropriate in This Case

The Named Plaintiffs and Opt-In Plaintiffs (together, the "Settlement Class Representatives") also seek service awards for their work and willingness to represent the class. No Class Member has objected to the Service Awards. (Francisco Decl. ¶ 11) The Service Awards are consistent with payments made to named plaintiffs and discovery representatives in this Circuit, other jurisdictions, and in other wage and hour cases. The service award is intended

to compensate the Settlement Class Representatives for their willingness to serve the Class, the service they rendered, risks they bore, and opportunities sacrificed to ensure a favorable class settlement. Thus, the Court should find that the Service Award is reasonable.

In light of the Settlement Class Representatives' efforts resulting in a substantial settlement on behalf of the settlement class, the Settlement Class Representatives are entitled to a Service Award, to be distributed from the Settlement Fund. "Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting in the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Massiah*, 2012 WL 5874655, at *8, *citing Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); *Sewell v. Bovis Lend Lease, Inc.*, 09 Civ. 6548 RLE, 2012 WL 1320124, at *14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); *Willix,* 2011 WL 754862, at *7 (approving service awards of $30,000, $15,000, and $7,500); *Torres v. Gristede's Operating Corp.*, 04-CV-3316 PAC, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); *see also Bricker v. Planet Hollywood N.Y., L.P.*, No. 08 Civ. 443 (WHP), 2009 U.S. Dist. LEXIS 76613, 2009 WL 2603149, at *2 (S.D.N.Y. Aug. 13, 2009) ("'The amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.'") (quoting *Fears v. Wilhelmina Model Agency, Inc.*, 02 Civ. 4911 (HB), 2005 U.S. Dist. LEXIS

7961, 2005 WL 1041134, at *3 (S.D.N.Y. May 5, 2005); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

The incentive payments are also within the range granted in other wage-and-hour cases throughout the country. *See,* e.g., *In re Janney Montgomery Scott LLC Financial Consultant Litigation,* No. 06-3202, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) ($20,000 incentive payments in FLSA and Pennsylvania wage and hour case).

Here, the Settlement Class Representatives performed substantial services and bore substantial risks for the class. Their services began with bringing the case that was eventually resolved in the settlement for more than 85 current and former  employees to recover gratuities, unpaid minimum wage, overtime, and/or spread of hours pay. (*See* Pelton Decl. ¶ 12) The Settlement Class Representatives served the class by providing detailed factual information regarding their job duties and hours worked, and the job duties and hours worked of the class members, assisting with the preparation of the complaint, helping prepare and execute declarations, producing documents in support of their claims, sitting for depositions, relaying information to Class Members during the pendency of this case, and assuming the burden associated with assisting with litigation. The Settlement Class Representatives also assisted Class Counsel to prepare for the mediations that took place on September 30, 2013 and November 20, 2013, respectively, and assisted with the continued settlement negotiations over the next several

months which culminated in this settlement. Several of the Settlement Class Representatives also attended the mediation session and actively participated in the settlement negotiations. The Settlement Class Representatives also risked their professional reputation  by agreeing to be the Named and Opt-In Plaintiffs. (*Id*. at ¶ 11). Thus, Service Awards to the Settlement Class Representatives are appropriate.

**IV.     Class Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Fund**

Class Counsel respectfully moves the Court for an award of attorneys' fees and reimbursement of expenses in the amount of one-third (33.33%) of the Settlement Fund or $800,000.00. A summary of Class Counsel's fees are attached as Exhibit 3 to the Pelton Declaration. During the past 20 months of litigation and settlement negotiations, Class Counsel's efforts have been without compensation (*id*. at ¶ 22), and their entitlement to be paid has been wholly contingent upon achieving a good result.

**A.     The Terms in the Named Plaintiffs' Retainer, the Settlement Agreement, and the Class Settlement Notices Entitle Class Counsel to One-Third of the Settlement Fund**

The Named Plaintiffs and Opt-In Plaintiffs agreed to Class Counsel's fee of up to one-third of the common fund plus reimbursement for costs. (Pelton Decl. ¶ 22) The Named Plaintiffs specifically agreed in their individually negotiated retainer agreement that Class Counsel would recover up to one-third of the gross settlement, or counsel's hourly rate, whichever was greater, plus litigation and settlement administration costs, if any. (*Id*.)  The Opt-In Plaintiffs also agreed in their consent to sue forms to Class Counsel's fees of up to one-third of the settlement. (*Id*.) The Court preliminarily approved the Settlement Agreement in this case that was agreed to by the Named Plaintiffs on behalf of the class and the Defendants. (*See* Doc. 27.)

Moreover, the Settlement Agreement provides that "Defendants agree to pay as part of this Settlement a maximum of $800,000.00 to Plaintiff's Counsel for their attorneys' fees and costs." (*See* Ex. 2 at ¶ E.) The $800,000.00 Defendants have agreed to pay equals one-third (1/3) of the Settlement Amount. Finally, the Court-approved Notices that were mailed to all Class Members stated the following:

> "Class Counsel will ask the Court to approve payment of up to one-third of the settlement amount to them for attorneys' fees and costs."

(Docs. 45-2, 45-3.) In accordance with the numerous agreed upon provisions, an award of $800,000.00 in attorneys' fees and costs, which is one-third (33.33%) of the Settlement Fund, and which includes expenses, is appropriate.

**B.    The Percentage of the Fund Method of Awarding Attorneys' Fees Is Appropriate in Common Fund Cases**

In common fund situations, the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir. 2000); *citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) (citing cases). The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost. *Id. citing Boeing,* 444 U.S. at 478; *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 392, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970)).

What constitutes a reasonable fee is properly committed to the sound discretion of the district court, *see Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir.1998), and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding. *Goldberger,* 209 F.3d at 47. In 1984, in *Blum v. Stenson,* the Supreme Court observed that "under the 'common fund doctrine,' ... a reasonable fee is based on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n. 16 (1984). The Second Circuit has accordingly recognized that *Blum* indicates that the percentage-of-the-fund method is a viable method for

16

awarding reasonable attorneys' fees. *Goldberger*, 209 F.3d at 49 *citing Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). Moreover, the trend in this Circuit is toward the percentage method, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), *citing Visa Check III*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003), which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," *Id.*, *citing In re Lloyd's Am. Trust Fund Litig.*, 96 Civ.1262 RWS, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002).

The percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases. *Savoie*, 166 F.3d at 460-61, c*iting* Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 254–59 (1985). It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method. *Id.* at 461. For the same reason, the percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet. *Id.* Finally, the lodestar method is time-consuming and burdensome on the courts. *See In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993).

### C.   An Award of One-Third of the Settlement Fund as Attorneys' Fees and Costs is Reasonable

District Courts should be guided by the so-called "*Goldberger* factors" in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50, *citing In re Union Carbide Corp. Consumer*

*Products Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989). Here, all of the Goldberger factors weigh in favor of awarding Class Counsel their requested fees.

### i.     Class Counsel has expended significant time and effort on this case

The procedural and factual history of this case up to the Court's Preliminary Approval Order is detailed in the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement. (Doc. 46). Before the initiation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Class Counsel focused their investigation and legal research on the underlying merits of the Named Plaintiffs' and Class Members' claims, the damages to which they were entitled, and the propriety of class and collective action certification. Class Counsel spoke with potential Class Members to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other relevant information. Class Counsel also obtained and reviewed numerous documents from the Named Plaintiffs related to their employment with Defendant Sushi Yasuda Ltd., including pay records, time records, and other related documents. (*Id*.) Defendants also produced to Class Counsel the restaurant's financials from Defendants' accountant regarding the gratuities and other monies collected by the restaurant. (*Id*.) It is clear from the amount of pre-litigation research and work, and the extensive settlement negotiations, including both an initial full-day mediation and a follow-up half-day mediation and continuing discussions with the mediator, that Plaintiffs' Counsel expended substantial time and labor on this case over the past twenty (20) months. Accordingly, this factor weighs in favor of awarding Class Counsel's requested fees.

   **ii.**  **The large and complex nature of this litigation warrant the award of attorneys' fees being requested**

Hybrid FLSA and state wage-and-hour cases are often large and complex. *See Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("courts have recognized that FLSA cases are complex and that "[a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action. . . . "). This one was no different, consisting of a FLSA collective action and NYLL state class action, covering more than eighty-five (85) individuals. The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Beckman v. KeyBank, N.A.*, 85 Fed. R. Serv. 3d 593 (S.D.N.Y. 2013); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ("in a class action suit, as here, the large number of plaintiffs increase the complexity of the litigation"). Thus, this factor favors awarding Counsel the requested fees.

   **iii.**  **Class Counsel took on a large amount of risk in prosecuting this case**

Class Counsel took on substantial risk in prosecuting this action. As was discussed in Section II.D. *supra*, this case involves complex factual and legal issues as to both liability and damages. The Named Plaintiffs and the Class were far from guaranteed to prevail on all of these issues. Further, as Plaintiffs' Counsel prosecuted this case on a contingency basis, advancing both fees and costs, counsel took on the risk that they would not ultimately recover anything for their time and effort. "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *Febus, LLC*, 870 F. Supp. 2d at 340.

Furthermore, in light of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), Class Counsel faced significant risk associated with class certification under Rule 23 because of the question of whether the Plaintiffs' job duties were sufficiently similar.

Since *Wal-Mart*, courts in this District have denied numerous Rule 23 motions in misclassification cases. *See Shayler v. Midtown Investigations. Ltd*., No. 12 Civ. 4685, 2013 U.S. Dist. LEXIS 29540, 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) (denying motion to certify class of security guards allegedly misclassified as independent contractors); *Trawinski v. KPMG LLP*, No. 11 Civ. 2978, 2012 U.S. Dist. LEXIS 183366, 2012 WL 6758059, at *6 (S.D.N.Y. Dec. 21, 2012) (denying motion to certify class of transaction associates allegedly misclassified as exempt administrators). Unlike in *Goldberger*, the instant matter was not a "'promising' case, with almost certain prospects of a large recovery." 209 F.3d at 54.

Accordingly, the award of fees is appropriate in cases like this one where Class Counsel's fee entitlement is entirely contingent upon success. *See Willix*, 2011 WL 754862, at *7.

### iv.  Class Counsel's representation has been of the highest quality

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Guzman v. Joesons Auto Parts*, CV 11-4543 ETB, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) (citations omitted). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's past experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for plaintiff. *Id*. (citations omitted).

As discussed in Section II, Class Counsel has achieved a fair, reasonable, and adequate recovery for Plaintiffs. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable. Furthermore, although the parties did not have to litigate this action through summary judgment prior to reaching a resolution; Class Counsel has significant experience prosecuting large-scale wage and hour actions including

unpaid wage and gratuity cases such as this one. Consequently, Class Counsel should be awarded the requested fees.

<b>v.  The requested fees are reasonable in relation to the settlement</b>

Class Counsel's attorneys' fees request of one-third (33.33%) is in line with decisions in this Circuit which have routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases. *See, e.g., Toure v. Amerigroup Corp.*, 10 Civ. 5391(RLM), 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) (33%); *Willix*, 2011 WL 754862, at *6 (33%); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440(DAB), 2010 WL 3322580, *8 (S.D.N.Y. Aug. 23, 2010) (awarding class counsel one-third of settlement fund); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198, *8 (S.D.N.Y. May 11, 2010) (one-third).

Similarly, Class Counsel's attorneys' fees request is in line with decisions from across the country that have awarded one-third or more in wage-and-hour settlements. *See, e.g., Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, No. 11 Civ. 592–wmc, 2013 WL 5745102, *1 (W.D. Wis. Oct. 23, 2013) (awarding class counsel 1/3 of the settlement fund for Hybrid FLSA and Rule 23 Class Action wage and hour case); *Adeva v. Intertek USA Inc., et al.*, No. 09 Civ. 01096-SRC-MAS, Dkt. 228, pp. 1, 7 (D. N.J. Dec. 22, 2010) (awarding class 34% of the class settlement fund in a wage-and-hour case); *Rotuna v. West Customer Mgmt. Group, LLC*, 4:09 Civ. 1608, 2010 WL 2490989, *7-8 (N.D. Ohio June 15, 2010) (one-third).

Class Counsel's requested fees of one-third (33.33%) of the Settlement Fund are therefore "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754865, at *6-7 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action). Accordingly, this factor weighs in favor of approval of the requested fees.

vi.     **Public policy weighs in favor of awarding attorneys' fees**

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys'
fee award. *Willix,* 2011 WL 754862, at *6 (citation omitted). Where relatively small claims can
only be prosecuted through aggregate litigation, "private attorneys general" play an important
role. *Id. citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980). Attorneys who
fill the private attorney general role must be adequately compensated for their efforts. *Id.*  If not,
wage and hour abuses would go without remedy because attorneys would be unwilling to take on
the risk. *Id., citing Goldberger* 209 F.3d at 51 (commending the general "sentiment in favor of
providing lawyers with sufficient incentive to bring common fund cases that serve the public
interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the
remedial purposes of the FLSA and [state wage and hour laws]. *Id.*

Based upon the negotiated fee agreement in this case, the typical percentage of
compensation in similar cases in this Circuit and nationwide, and the *Goldberger* factors, Class
Counsel is entitled to a reasonable attorneys' fees award of one-third (33.33%) of the Settlement
Fund.

**D.     The Lodestar "Cross Check" Further Supports an Award to Class Counsel
        of Thirty Percent of the Settlement Fund**

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage
method and to loosely use the lodestar method as a "cross check." *Goldberger*, 209 F3d at 50. In
calculating the lodestar for cross check purposes, the "hours documented by counsel need not be
exhaustively scrutinized by the district court." *Id*. Rather, "the reasonableness of the claimed
lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

Courts then consider whether a multiplier is warranted based on factors such as (1) the
contingent nature of the expected compensation for services rendered; (2) the consequent risk of

22

non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at **78-79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar).

Here, the lodestar sought by Class Counsel, approximately 2.8 times, after deducting expenses, falls within the range granted by courts and equals to the one-third (33.33%) being sought. (*See* Ex. 3 (Summary of Attorneys' Time Records).) While the multiplier is toward the higher end of the range of multipliers that Your Honor has routinely allowed in wage and hour actions, this should not result in penalizing plaintiff's counsel for achieving a relatively early settlement, particularly where, as here, the settlement amount is substantial and nearly makes class members whole for their alleged unpaid gratuities and wages. *See Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee

for settling a case quickly"); *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). Where "class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Beckman*, 293 F.R.D. at 482 (internal quotation marks and citations omitted). In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including, answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendants about administering the settlement and distributing the fund. *See* Pelton Decl. ¶ 8. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *See Diaz*, 2010 U.S. Dist. LEXIS 139136, 2010 WL 5507912, at *7.

### E.    Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs

It is well-settled in this Circuit that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). *See also Kuzma v. Internal*

*RevenueService*, 821 F.2d 930, 933-34 (2d Cir.1987) ("Identifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable...and are often distinguished from non-recoverable routine office overhead, which must be absorbed within the attorney's hourly rate."). Here, Class Counsel's costs incurred in prosecuting this action are $20,020.18, which includes costs for filing and serving the complaint, mediation fees, deposition fees, translation and interpretation services, and mailing and postage costs. These costs are included as part of the one-third of the Settlement Fund requested as attorneys' fees. Because the reimbursement of litigation costs does not increase the amount of the Settlement Fund that is requested by Class Counsel, and such costs are reasonable and were incidental and necessary to the representation of the class, the Court should award Class Counsel reimbursement of their litigation costs as part of their requested fees.

**V.     The Settlement Administrator's Fees Should Be Approved**

Simpluris, Inc., a third-party settlement administrator, was retained to administer the settlement. The Settlement Administrator's fees are estimated to be $20,000.00, including fees incurred and anticipated future costs for completion of the administration. (Francisco Decl. ¶ 12.) Per the Settlement Agreement, Defendants have paid a maximum of $20,000.00 for such administration costs, separate from and in addition to the $2.4 million settlement fund. (Francisco Decl. ¶ 14.) Any amount of administration costs above $20,000.00, which the Settlement Administrator does not anticipate at this time, is to be paid from the settlement fund. Accordingly, Plaintiffs respectfully request that the Court approve a separate payment by Defendants of the Settlement Administrator's fees in the amount of $20,000.00.

<u>CONCLUSION</u>

For the reasons set forth above, the Named Plaintiffs respectfully request that the Court grant their motion for Final Approval of Class Settlement and enter the Proposed Order.

Dated:  New York, New York
       July 25, 2014                 **PELTON & ASSOCIATES PC**

                                   By: ___*/s/ Brent E. Pelton*_____
                                   Brent E. Pelton (BP 1055)
                                   Taylor B. Graham (TG 9607)
                                   111 Broadway, Suite 1503
                                   New York, New York 10006
                                   Telephone: (212) 385-9700
                                   Facsimile: (212) 385-0800

                                   *Attorneys for Plaintiffs*